Before we begin, I want to express gratitude and thanks to George Lurie for sitting with us. I've never had the pleasure of sitting with him before. And I thank you very much, George, for taking the time to help us out with these cases and for sharing your intellect and inquiry with us. Maybe you can help us make some sense out of these cases and keep us from screwing up our circuit law at the same time. The first matter is Lemon Bay v. Hammonds. Good morning, Your Honors. Good morning. It may please the Court, Clarence P. Paschewitz of Paschewitz & Associates appearing here today for plaintiff's appellants, Lemon Bay Partners, LLP, Donald F. Benoit, and Malcolm Rosenwald. I have asked the Court if I could reserve three minutes for rebuttal after the defendants speak, and if that's okay with the panel, I would like to do that. Okay. Your Honors, we are here today on an appeal from a district court order dismissing the lack of subject matter jurisdiction for this entire complaint without granting any leave to amend. You keep saying that it was dismissed with prejudice. What do you have in the record that shows this was a dismissal with prejudice, Mr. Paschewitz? Your Honor, the case was closed. We moved for reconsideration. We said this seems to be a dismissal with prejudice. We would like leave to amend so that the case is not closed so we can amend and proceed with additional federal claims. And the court below did not grant us that, and ordered the case closed. So you're saying that because you weren't granted reconsideration, the dismissal was with prejudice? Nor were we granted leave to amend, and the court found that there was no subject matter jurisdiction, so there was nothing more we could do. Yeah, my point exactly. If the finding is that there's a lack of subject matter jurisdiction, how is that a finding that you can't bring your claims someplace else? Well, it's not a finding you can't bring your claims someplace else. And if that's true, then how is it a dismissal with prejudice, Mr. Paschewitz? It's a dismissal with prejudice in that particular district court. I don't believe that the court allowed us to go ahead and bring the claim again without seeking leave to amend because the court may say, well, you have to come to us as a matter of first instance. It's an interesting definition of with prejudice. Well, Your Honor, if we went ahead and refiled that very same complaint or the complaint we asked to refile and were not given permission to refile, we might be facing contempt of court. The judge was presented with a proposed amended complaint, 70 pages, redlined. We said if this complaint doesn't pass muster. Let me ask you to view it this way. Assume for the sake of argument that you wanted to go file every claim except for the federal contribution claim in state court. Is there anything in the district court's order that would prevent you from doing that? No, we could have gone ahead and filed those claims in state court. So in that respect, you concede that those claims, which are the vast bulk of the complaint, are clearly not dismissed with prejudice, right? Not specifically, Your Honor, although when a court dismisses a lack of subject matter jurisdiction, I would contend that you are dismissed with prejudice in the federal court. You can always have the question. I'm sorry? Assuming you're right in terms of being dismissed with prejudice in the federal court, that doesn't really answer Judge Jordan's question. It seems as though the entire thrust of what the district court judge did was to not only suggest to you but tell you to take these claims into state court so that you could file them in state court. Well, we could have done that, and if that's considered non-dismissal with prejudice subject to no appeal, then every time a judge makes an error, as we contend the judge did here, in saying a case should go back to state court, the dismissal then would not be with prejudice and there could be no possible appeal. So every filiate exercise supplemental jurisdiction would not be reviewable. You'd just have to go to state court and be content with the ruling. Here we say the court made a mistake. That seems to equate or to say that every dismissal that's on subject matter jurisdictions would have to be a dismissal that's defined with prejudice. But, of course, we know that's not true. But, anyway, I've got your answer. I'm saying that it is an appealable final order. Maybe I'm not quite getting it. And those two things are different. Yes, Your Honor. I understand your argument. Part of their argument is that, at least I guess as to the Denoit complaint, I think it's the Denoit complaint they're referring to, that the failure to re-plead diversity of jurisdiction was tactical on your part and deliberate, and they say that exactly the same thing was done in IBASE's ink derivative litigation. And I have that. Did you represent? Were you involved in that case? I personally was not. My co-counsel was. Okay. They represented a different plaintiff in that case. I frankly don't see the logic to the argument. It's a tactic because it can only be prejudicial to plaintiffs. If plaintiffs had the issue… I should ask them what the goal of the tactic would be. Your Honor, I don't know what it would be. Lawyers are human, and they make mistakes. And sometimes they don't plead perfectly, and that's why there are amendments. Oftentimes you wish you had pledged something in hindsight, and you just didn't, and it certainly would have helped you in here. It certainly would have helped us to plead the Denoit diversity allegations. The complaint was dismissed. Not to plead them revealed us nothing, and there's no possible tactic that I understand. Well, it is interesting because the order that was entered there, consolidating the cases, is almost word for word identical to the order that was entered here. Maybe this is just standard language. Consolidated derivative complaint will supersede all existing complaints filed in the actions. The same language, maybe it's just that it's used. I think it's often used because courts are familiar with it, lawyers are familiar with it, other courts have approved it, and we're familiar with working within that framework. The district court dismissed the whole case on the basis that it was essentially a state case. But there was a federal claim there. Is it your view that the court should have held the federal claim even if it dismissed the state claim? Yes, Your Honor, it is our view. As a matter of fact, if we look at the procedural history of this case, nobody argued up until a very late stage that there was any lack of subject matter jurisdiction over the federal claim, and I know that's not the positive. We can argue that very late in the case, and that can be true. However, this only came up in the reply brief submitted by the outside directors, and when I say it only came up, subject matter jurisdiction only came up, and then they did not ask for dismissal of the federal claim. They only asked for dismissal of the state supplemental claims. It doesn't have to be state because that's dependent, in your view, on the state claims. The federal claim? Yes, its contribution. By definition, right. The federal claim is dependent upon the 10B claim that was asserted against the top officers and directors of MBNA because if MBNA is held liable. It's a contingent claim, I think. It's a contingent claim. It's a claim over. So if MBNA, now Bank of America, since they've acquired MBNA by merger, is held liable, then they have a right under state law and federal law, as encompassed now in the PSLRA, to bring the contribution claim. We as the Riverton plaintiffs are bringing it on their behalf. Now, speaking of the PSLRA, doesn't the language of that statute, specifically subsection F8 of Section 78U4, imply strongly that there has to be a finding of liability before there's a contribution claim? I want to read it to you and have you walk me through your reasoning on it. Yes, Your Honor. It says, a covered person who becomes jointly and severally liable for damages in any private action may recover contribution from any other person, et cetera. A covered person who becomes jointly, severally, and liable, that I think your opponents would indicate that that becomes jointly and severally liable, probably means until they become jointly and severally liable, there's not an opportunity to, quote, recover contribution. How is that reasoning wrong? That reasoning is wrong because the language in the PSLRA echoes similar language that's always been in the federal rules, in Rule 14A for interpleader claims, that's been in Rule 82 for hypothetical claims. It's been recognized for a long time because of judicial efficiency. That all related claims, including contribution claims, should be brought in the same action, not in two actions, risking not only the time and expense of the lawyers and judges, but inconsistent adjudications. How could it be efficient to litigate a claim which may never come into being? It's efficient because the party who is the defendant is ready to assert their claim over as part of that case or as soon as that case is over. They participate in all the discovery. They're done and finished. This circuit had a very identical situation in the case we said Langer v. Monarch Insurance. And if I may go into the facts of that a little, it illustrates how this works. In Langer, this court was faced with a doctor who thought he should be given insurance benefits by the hospital for which he worked. It was called Presbyterian Hospital. He sued Presbyterian Hospital. Presbyterian Hospital said we're not liable, but if we are, then the insurer for the doctor, Monarch, the disability insurer, should be liable to us. Start Circuit in that case said under AD2, even though it doesn't apply here, the same theory behind AD2 efficiency allows in one case, Langer v. Monarch said, for these claims to be brought together. One claim is hypothetical. Normally they'll file a third-party complaint against the person that you're alleging there may be an obligation. The contingency is based upon to do it that way. If I'm not mistaken, the underlying liability here for which you want contributions arises out of the action in the state courts against MBNA, or is that not correct? No, that's not correct. The original claim that was brought in these cases arises out of the 10B claim that was asserted against MBNA, Bruce Hammond, its CEO, and other top executives. And then we brought this claim derivatively on behalf of MBNA, also a defendant, saying if MBNA is held liable, its shareholders shouldn't have to pay the freight. But it's a separate securities action that you're hinging a lot of your stuff on, right? Separate but in the same court, which means they could be consolidated, they could be coordinated, they could even be tried together. That's not unprecedented. They could be, but the record here is these are separate cases and you're tying it to the separate case, right? Not only plaintiffs, Your Honor, when defendants removed the Rosenwald case, they said it made no sense for the Rosenwald case to be sitting in Maryland. It should be removed so it could be coordinated with the 10B Baker case and the ERISA case that was already pending before Judge Sleet. They said every possible efficiency can be realized if we do that. And I don't know at that point whether they had them on consolidation, joint trial, two juries. There are many ways to do it. In the Tyco case, a very, very big 10B-5 litigation we cite in our briefs, the judge there said Dennis Kozlowski, the CEO, can be brought in right away hypothetically so that we're ready to go with that case for contribution against him in case Tyco is held liable. And the judge said there, didn't know exactly how we would do it, but we could defer proceedings on that until Tyco is held liable, but we'll be way ready to go. We'll be far along the path. But in any event, Your Honor, it wouldn't really matter whether or not that might create some bumps in the road that it doesn't go to the court's underlying jurisdiction at all. It might just be procedurally how you handle it. It's a cognizable federal claim. And the rules for dismissing a cognizable federal claim are very, very narrow. It would have to be more or less a bogus claim, a claim that's not recognized in the law, a claim that's foreclosed by many, many precedents. I hear there was no finding of frivolity or bad faith that the tail wagging the dog language the district court used. I guess you could read into that that he thought that the federal claim was brought only to obtain jurisdiction over what were really state claims. We didn't really say that. That's the conclusion of this holding. Would you have any problem with us remanding it for the judge to elaborate on his reasoning for dismissing the federal claim? For a finding of frivolity, the kinds of things that you're mentioning, that would go to allow the court to dismiss a federal claim that's inserted into what is really a state action. Your Honor, we would have no problem for a remand for that. We'd prefer a remand to allow us to file one amendment, which we didn't have. And I think that could clear up all of the authority issues in this case. All we needed was an amendment. We had proffered one. There was one judicial decision. We were early on in the case. The judge did not look at our complaint at all, as far as we know. At least it's not mentioned in the opinion. He didn't find it frivolous. He didn't find our federal claim frivolous. He had dismissed it. So a remand here allowing the judge to look at our amended complaint. We can finalize it. We can file it. And then we can have a real decision on the merits of all these issues. And we could solidify the federal subject matter jurisdiction that was found lacking. And this Court has previously upheld, in fact, held it to be abusive discretion for a district judge not to allow a party to fix inadequate subject matter jurisdiction allegations. When you say fix inadequate subject matter jurisdiction allegations, you cite repeatedly Phillips v. Allegheny County, which is a 12B6 case, not a 12B1 case. What's your authority for the proposition that a district court has to give somebody an opportunity to fix a subject matter jurisdiction problem if the court believes that, for example, there's no diversity or something's moot or it's not right or it's a clearly frivolous claim? How do you morph Phillips, a 12B6 case, into the statement you just made that district courts are required to give a subject matter jurisdiction allegation another shot? Your Honor, I think Phillips is just the latest iteration of holding this circuit as made many times. We harken back in our briefing to Berkshire Fashions v. M.D. Cucasin, 954-528-74, where the plaintiff initially pled a federal claim. The district court found that federal claim could not be the basis for subject matter jurisdiction. And then the plaintiff said, well, wait a second. We can allege diversity. We had that. And it was indeed found an abusive discretion at that very early stage not to allow the plaintiff one more bite at the apple to fix subject matter jurisdiction by alleging the diversity that the Berkshire courts had existed from the beginning of the case. So it has been the evolution of this court's jurisprudence that plaintiffs are allowed at least one more bite at the apple at a very early stage so long as what they're saying is not frivolous. And we had submitted a proposed complaint. We didn't think it was frivolous. We thought we were okay from the beginning with regard to subject matter jurisdiction. I guess 20-20 hindsight proved us wrong. Didn't you actually tell the district court, as you gave the complaint, we don't want to amend our complaint? Doesn't the record say we're not seeking to amend our complaint? We thought, and I think the other party's actions reflected this, that we had properly alleged subject matter jurisdiction. It's not a small thing to keep seeking amendments, using up amendments. So what's the district court supposed to do, Mr. Paskowitz, when you say, here's a red-line complaint. We don't want this amended complaint. What are we supposed to tell Chief Judge Sleet and other judges like him? If a party hands you a proposed amendment pleading and says, don't look at this, you have to look at it anyway, don't believe them when they say they don't want to have you amend? Well, we didn't tell them not to look at it. We proffered it. But you said you didn't want to amend. So I'm trying to get you to tell me what guidance do we give the district court when a party says, I don't want to amend. You said, by the way, here's what I would do if I did want to amend. I think the guidance should be similar to what we said in the Phillips case, which I realize has its distinctions. It was that the district court, if they're about to dismiss or going to dismiss a case, should give plaintiffs at least one more bite at the apple to amend the complaint. Even if they say they don't want it? Well, we never quite said we didn't want it. We said if. It was, again, a contingency. If the court finds this, it's a very common thing, I think, in the federal court. I've done it before, and I want to hold myself up as a paragon of a litigation procedure. But to say, Judge, if we have missed the mark somehow, if you think we've fallen short, we can improve upon this complaint. And it's been the standard practice, at least in my experience, that you get at least that one more bite at the apple to do that. In the non-legal context, it's called building suspenders, I think. Well, it's saying, you know, we'd rather not amend the complaint right now, but if there are deficiencies, we can do so. Because I think this has to be reconciled with the rule that you have to show a judge that any amendment that he might grant you is not frivolous. Because this court has upheld denials of use for amends where the plaintiff offered nothing. The plaintiff said, well, I think I might, I may perhaps amend the complaint if Your Honor desists of this case. This circuit court has said that's not enough. They said the minimum you have to do, and in some cases, including Ramsgate, it's sufficient to do is to offer a proposal to amend the complaint, and then the district court can either dismiss and tell the litigants what exactly should be in a proper pleading, as the court may find sufficient in the future, or say, I don't want to hear this now, and I've had this happen in other cases. Go ahead, finish that, and finalize and file it. And that's your last shot. And then we'll see if you've properly pled everything you need to plead, and that's it. But you've had that one more shot to amend, and we believe that that's at least what should have happened here. And that really resolves all of the other issues that have been briefed in these voluminous papers. Does it resolve the rightness issue, Mr. Paskowitz? I mean, there's a subtext here that, and I apologize. No, it's all right. I know you're relying on the Langer case, and I've seen your briefing on that, Langer v. Monar. But there is a central issue here about whether the single federal claim you've got, the contribution claim, is right, something that the opposing side has argued. And when you say, if we could just send it back and amend, that would take care of everything. If, in fact, the law of the circuit and the PSLRA are that you actually have to have a contribution, you actually have to have some claim to be contributed against in order to make out a contribution claim, then amending wouldn't fix it, would it? Yes, it would, given the amendment we proffered, because we added three additional bases for subject matter jurisdiction. Not only did that proposed red line complaint contain that federal contribution claim yet again, but it added three new – well, we added diversity jurisdiction. I don't want to call it a claim. We added diversity allegations. We added a 10b-5 claim regarding C.O. Hammons with regard to his statement that MBNA was not for sale, which is a good 10b-5 claim under several district court opinions. And we added a federal proxy claim under Rule 14a-9, which would be a stand-alone federal claim. So that very amendment that we proffered would solve all the federal jurisdiction problems, even if Judge Seedon remands or even if he had then said, well, I don't like that federal contribution stand-alone claim, but I'll let you file that amended complaint and we'll go and look at your other allegations. So we had diversity and we had two additional federal claims. So that would have solved it. I think we deserve some time for rebuttal, Mr. Baskowitz. I did deserve a few minutes. Okay, thank you. We'll hear back from you. Okay. I'm sorry, is it the time, sir? Yes. Yeah, there's been time for a while. We let you go. Oh, I'm very sorry. We'll let them go if they need their time. Thank you. Thank you. Good morning, Your Honors. If you may please report. I'm Susan Solstein and with me is my colleague, Rachel Barnett from Skadden Arts, and we represent the outside directors of MUNA. Ms. Solstein, I just have to say, I've been here 15 years. I've never before seen a court team, an appellate team, composed only of women. This is really wonderful, especially given the bells and whistles on the law firms involved. I'm not going to assume from that the glass ceiling no longer exists. Maybe it's been lowered a little bit or raised a little bit, I don't know, but as the father of two daughters, it's really heartening to see. I agree, Your Honor. As the mother of one. Okay. Your Honors, I think the parties to this lawsuit have all agreed in their briefs that this court's review of the district court's decision to decline to exercise supplemental jurisdiction is for abuse of discretion. But, you know, this is a really bizarre case. One of my clerks I had working on this came in to me and said to me, this is what the case is about, and I had read the briefs months ago. I said, that can't be right. You're confusing the subject matter jurisdiction with the supplemental jurisdiction. Go back and take another look at it. And I went back and took another look at it, and I was scratching my head because it looks like the judge relied primarily on Gibbs, a supplemental jurisdiction case, and used the test that one would use for applying supplemental jurisdiction to see whether or not you're going to keep the state court cases and dismiss the federal cases along with the state court case. And I cannot imagine a better jurisprudential example of tossing out the baby with the bathwater. It's amazing. Help me. Am I missing something here? Well, Your Honor, first of all, to the extent that the arguments I'm representing, the outside directors, the arguments I'm addressing are the supplemental jurisdiction arguments. But I think the answer to your question. I can hold off. Yeah, I'm happy to. I mean, the supplemental jurisdiction seems to me you're on fairly firm footing. But that doesn't really get you where you want to go, does it? Well, I think the court had exercised its discretion properly with respect to getting rid of this entire case. How can we tell that, though? How can we tell that the court exercised that discretion? Is it Salstein? Yeah, Salstein. Salstein. How can we tell that, Ms. Salstein, when the premise of the district court's opinion is, I'm throwing this case out because state claims, quote, substantially predominate, which, as Judge McKee has just pointed out, is the 1367C2 standard for supplemental jurisdiction, not the standard for looking at a federal claim. So if that's the whole of the court's analysis, how do we know that the court was making any kind of analysis about supplemental jurisdiction on that basis and not just pitching the whole thing based on an incorrect standard? Well, Your Honor, I think if you read the opinion, it's clear that he was looking at the complaint as a whole and looking at the federal contribution claim as a standalone. I don't think it was based on supplemental jurisdiction grounds. I think it was based on the grounds that it was... How do you do that? If it's looking at it as a standalone, if you've got a legitimate federal claim there that turns on the interpretation of federal law and you're assuming it's not a claim which is only put in there for a bad phase of delay or frivolous to bootstrap a state case into federal court, how can you do that? How can you say, well, you look at the federal claim as a standalone, it's a contribution that depends on something else, and that something else is really state law stuff? I don't get that. Do you think that's what Congress had in mind when they drafted the PSRA? Even the 1367C2, I guess, that he relied upon, the action that is referred to in that statute on supplemental jurisdiction, it seems pretty clear it's referring to the state actions, to the state stuff, if you will, and determining whether or not the state stuff can be declined on or demurred on if the federal court finds that this is really not what this suit entails, that the state stuff really is not intricately involved in the federal stuff that's going to go back to state court. But the federal stuff still remains, though, doesn't it? And you were kind of smiling. You know, there are many times a litigant has to – I mean, you're a litigant, you have a position to argue, but as you were smiling, I was talking to you, I began wondering, do you really believe the argument she's making? No, no, no, Your Honor, I absolutely – I'm sorry. Yes, I do. I absolutely do. I'm sorry, and I'm sticking to it. I mean, I think here – and, again, I'm not – You mean you're sorry if you smiled. I don't avoid that. Well, don't try to avoid that. No. Your Honor, no, I do think that the hook that they tried here, the federal contribution claim, just didn't work for them. Yeah, but whether it works or not for some other reason, we're looking at what the record is, and the record is, and I'll quote you from your appendix at 12, the district court's opinion at page 9, quote, the court finds that the plaintiff's contribution claim, that's the federal claim, is so insignificant in comparison to the rest of the complaint that it is clear that the state law claims, quote, substantially predominate over, unquote, the federal law claim. That's 1367. That's the standard for deciding whether there's supplemental jurisdiction, and yet it certainly seems that that's the district court saying there's no federal claim here, based on the standard applicable for deciding supplemental jurisdiction. Am I reading this wrong? Your Honor, I think you're reading the opinion right. I think that the opinion is longer than that quote, and when you read the opinion, I think it does say that it didn't find not only just insubstantial, but the opinion goes on to say that the federal claims really don't, and perhaps the federal claims don't state a claim. Well, that's very different. And again, I want to leave that argument to the party to whom the federal claim was asserted again. Well, you said, continue on with it. Ten of the amended complaints, 11 counts, focus on most exclusively on state law breach of fiduciary claims with no connection between the state claims and the federal claims. Sixty-nine pages of the plaintiff's answering brief and response address state law claims relating to grievances. The plaintiff's dedicate only a few short paragraphs and three sentences in the answering brief discussing the federal claim. That all seems to me to be the stuff of a supplemental jurisdiction inquiry to determine whether or not I'm going to hear these state law claims or whether or not they are better off heard in federal court. And that's the argument we made, Your Honor, with respect to the supplemental jurisdiction claim. Well, then speak, if you would, to the argument made by your opponents that these things are so tied in with the securities claim that it really wouldn't make sense to send it away. That there's this companion action. Well, it's not the same case. It's right there in the same court. And that, indeed, you folks yourselves in removing the Rosenwald case said, hey, this is so tied up with the other side that it doesn't make any sense to have this in state court. So I guess looking at it from their perspective, what they're telling us is, how can you believe anything these folks are telling you about supplemental jurisdiction? They remove a case to federal court saying, oh, it's got all this federal connection. And then when they're in federal court, they say, hey, it's got no federal connection. And let me explain that. I wish you would. Okay, thank you. With respect to the removal, at the time the case was removed, the merger had not been announced. I'm sorry, let me back up. At the time that the removal petition was filed, none of the complaints alleged anything with respect to the state law claims. It was all based on this allegedly misleading statement in the first quarter of 2005. And, in fact, the Benoit action alleged a 10b-5 claim against all the parties. Sorry, is what you're saying is that it got less federal over time? They totally changed the theory of their case. And why? I mean, one could surmise that because the securities case, to which my clients, by the way, are not descendants, we're not in that case. And we're not a party to the contribution claim. Is that relevant? Well, it is, because you're talking about the distinction and the independence between the contribution claim and the state law breach of fiduciary duty claim. But we're not just talking about that. I want you to stay on their playing field for a minute, if you would. Their playing field is the securities claim is driving this too, the securities action. Therefore, it doesn't make sense to send this out to federal court because we've got claims here which are not only federal linked to the contribution, but they overlap with the assertions that are made in the companion case. Now, that is not the whole of their argument, but that's one of the things I understand them to be saying. Is that wrong? I do think that's wrong, Your Honor. I don't think there's any connection between the claims that they raise on the state law side and the claims that they're raising on the contribution side and the claims that have been raised in that securities case. The claims against the outside directors that are asserted in this particular complaint are state law breach of fiduciary duty claims. They're independent of the securities case that's proceeding in another forum to which we're not parties. But don't they both depend on the same nucleus of fact? There aren't any overlaps with respect to my clients. My clients aren't even named in that securities case. The motive theory that they've alleged, Your Honor, as part of what they say proves the independence, they say that the reason why these cases are interrelated is because the defendants, they say, and they don't say which defendants, but they say the defendants, wanted to get insulation from liability in case the securities case against them go the wrong way. Well, that just proves the point. We're not even parties to that case, so it can't possibly provide the motive. There's really no connection here between what's going on in the securities case. I mean, they could have alleged a claim as a motive without mentioning that securities case and said, well, they wanted to get them indemnified. It's the same as we need to hear answers from pro-conspiracy. Well, I don't think the contribution claim is dependent either, Your Honor. I think at the end of the day, the fact that they have an unright contribution claim – But you didn't argue rightness below, did you, in the district court? I believe they did, but again, that's my co-counsel's argument. And, of course, to make the analytical steps you want us to about supplemental jurisdiction, we'd have to be going beyond what the district court did, wouldn't we? I mean, because the district court's decision was based on throwing out the contribution claim and saying the rest goes. Or am I reading it wrong? No, I think the court said that the supplemental claims are state law claims. Sure. I don't think that it was dependent on what happens with the contribution claim. In fact, for the outside directors, we're not named, so it couldn't be dependent on that claim. So if you're right, and maybe I should address this to your colleague, we have a situation where there is a federal claim that's asserted under federal law that is there without being put in there simply to bootstrap a state case into state court. There's no finding of that here. And there's some other things that come in. And we almost tell the district courts that you've got to look at the complaint, look at the allegations, even look at the briefs as Chief Judge does here, and kind of make a quantitative analysis and a qualitative analysis. If it looks like a state case, smells like a state case, works like a state case, you use what would otherwise be limited to supplemental jurisdiction, and you get rid of the federal claim. Is that what you're saying? Because if we ruled in your favor, isn't that where we come out? No, Your Honor. I think the plaintiffs made a choice when they filed this case. And the choice was to focus on state law claims. That's what this case is about. The contribution claim, I think, is really the tail on the dog here. To my mind, though, that something means that it's very, very clear. You have to exercise supplemental jurisdiction. That's what your argument says to me. You've got to exercise supplemental jurisdiction under the Gibbs analysis and under the statute and under the old pendant jurisdiction framework, as they called it when I was in law school. Because the state law cases are so intertwined, as was argued at the removal stage, with the federal cases, and you've got to keep those cases. And it seems to me that's where you come out. You're saying, no, no, I've got it backwards. That means you've got to get rid of the good faith federal claim, which would otherwise be properly brought in state court. That's what you're arguing, even though… I don't think there's any connection between the contribution claim and the breach of fiduciary duty claims. The breach of fiduciary duty claim, let me just give you the example. If the plaintiffs are right that it's so intertwined with the federal claims, there's nothing in these state court claims that would have to await a finding in that separate action. These are standalone claims. They're not contingent on anything that's going on in another courtroom. They're not contingent on what happens on the contribution side. I mean, this is part of the plaintiff's argument, too. I just don't see, there's no connection between those two claims. And even if you look at the timing, the federal contribution claims and the securities claims are all based on disclosure allegations in the first quarter of 2005. The merger wasn't even announced until June of that year. There's just no connection between those claims. And that's why we weren't named. We weren't named in the securities case, and we're not named in the contribution case. I certainly understand your argument. I'm having a little trouble with this one point. Since the district court, in its relatively brief ruling, centered its attention on the contribution claim, how do we know – and I think probably for some reason the prospect that would exercise its discretion in the manner that you're describing. But how do we know that in the abstract since what you seem to be saying, if I've understood your argument right, is you know what? Even if that contribution claim stays, these state law claims are so separate, so completely separate, that the court's analysis, even though it focused on the contribution claim, can be pulled over to the state law supplemental jurisdiction issue. And you should at least uphold and say, okay, adequate exercise of discretion as to the supplemental jurisdiction. Let those state law claims go. That seems to be the gist of your argument, that even though what the district court did here apparently was to apply supplemental jurisdiction standards to the federal contribution claim, that we should suppose the district court would apply that same analysis just to the state law claims and let them go, even if the court had to hold on to the contribution claims. Am I understanding the reasoning accurately or not? Other than – well, let me just back up. I don't think that I would concede the point that the court was applying supplemental jurisdiction analysis to the federal claim, but I will leave that to my colleagues. That was the language of the court. I think that the case here, this complaint – I'll be fascinated to hear how you're not going to concede that, given the language of the court. That's what he said. But I think what you said is correct, Your Honor. I think this complaint, though, is a state law complaint. It's a complaint that's challenging the merger. That's really what this is about. And the reason is they wanted – I think they wanted a hook separate and apart from that securities case. They didn't want to get consolidated with the other case that was going forward. So once the merger happened, well, here's the hook. And that's when you get rid of – that's when the amended complaint gets rid of the 10 to 5 claim. It gets rid of the diversity allegations that were deficient to begin with. But all those federal hooks are gone. And what are we to make of the argument that your opponents make now that, look, even if you sent it back, we've got all this other stuff in the proposed amendment to the complaint that would give jurisdiction to the court. And if we're only sent back, we can make those allegations, and we're really entitled to make those allegations. Well, first of all, Your Honor, they stood on their complaint. There's just no question about it. They told the district court – I understand your position. I got your position. Now, let's assume for the sake of our discussion that we accept the belt and suspenders argument, that it's a legitimate thing for a party to come in and say we don't want to amend, but here's what we would do if you think we need to amend. Well, if you take a look at that hypothetical complaint, the hypothetical complaint, again, is deficient. Just take a look at the diversity allegations in that complaint. The diversity allegations don't make as was required by this court's ruling in Rav. They don't allege anything with respect to diversity except go back, they say, and look at the original Benoit complaint. Well, the original Benoit, and that's contrary to the Supreme Court's decision in Rockwell.  You can't go and impute the diversity allegations that you once alleged got rid of to an amended complaint. The court said that he wasn't allowing the amendment on futility grounds, and that's what you're arguing, you're arguing futility. That would be one thing, but that's not really what he did. We could then take a look at whether or not he would be right as a matter of law and use his discretion based upon the conclusion that it would be futile to allow the amendment and dismiss the case. It all seems to me that in terms of, so far as your clients are concerned, you do have a very, very good argument that the complaint should have been dismissed as to your clients. Well, that I would agree with, Your Honor. Surprise, surprise. But also, I think from the, you know, the But it's not the entire complaint. Well, I think the complaint should be. Everybody.  But with respect to the point on the hypothetical complaint, there isn't even looking at that complaint, even if you were going to give them the benefit of the doubt. And by the way, they've amended before. I want to make that point clear. This would be the third amendment. In this case? Yeah. The Lemon Bay plaintiffs, the Benoist plaintiffs, this would be their, if they were allowed to amend again, this would be three times. But again, the court, that would have been helped tremendously had the court said that. That is in the record, though, Your Honor. It is in the record. It is in the record. They have three times tried. And, you know, it's really a product of their own strategy, I think. What would be the aftermath of the strategy? And you argue strategy in terms of not putting the diversity record, and we inadvertently left out the diversity allegations. What strategic or tactical advantages came from doing that kind of thing? I'm not sure if they gained an advantage. I don't think they thought. I think they must have. I'm not the plaintiff, and I don't want to presume what they were doing. But I don't think they thought they had diversity of jurisdiction. Because someone went through this complaint and actually crossed out not just the diversity allegations, but also the citizenship, the residencies of the parties. You know, I don't think they had it. And, of course, they made other changes, but that changed as well as taking out some of the other claims. So I think from a tactical point of view, they decided to take it out. I have one final one. Go ahead. In the reply brief, the plaintiffs say that the defendants, and they don't distinguish, which is problematic, but they say the defendants have argued in the district court that even a subset of claims cannot be asserted under the doctrine of race judicata, going, I guess, to the issue of this was a dismissal with prejudice. Is it, in fact, the case that they have come forward to the district court and said, hey, let us bring these claims separately and differently? And you folks have said, no, you can't do it. Race judicata was dismissed. They could try their luck in state court, Your Honor. They can bring their plaintiffs down. You know, they can bring their papers down if it's in Delaware to the district court, to the chancery court, and try their luck there. So the race judicata point, if you've raised it, is that, hey, the question of federal jurisdiction has been decided. Nothing about the merits. This is not a merits. It's not a merits decision, Your Honor. It's a 12-v-1 decision, and so it's not on the merits. And so, Your Honor, as I said, they have had their chance, their day in court here. Their complaints have been amended. They took their own – they determined the nature of the complaints, took out allegations and made this a state court complaint, and that's why we're here. So the district court was well within its discretion to exercise its jurisdiction to decline to extend supplemental jurisdiction to the state court claims. And, you know, there's nothing that the plaintiffs have said, I think, that disputes that. You know, they've also, Your Honor, just getting back to the point on standing on their complaint, which I think is an important point. I mean, the plaintiffs stood up in court, handed the briefs to the court, which said we're not moving to amend. We're not amending here. And then they gave the reasons. We're not amending because we don't – we think we have subject matter jurisdiction, and we're not amending because we think it's going to take too much time. You know, they had to make a choice. They should have, you know, if they wanted to do this properly, they should have filed a motion. They should have asked for leave to replead, attached the complaint, but they told the court not to do that, not that that's not what they wanted. And I think from the – it wasn't an abusive discretion for the courts to take plaintiffs at their word. I think, Your Honor, you asked the right question before. What is a district court judge to do in that situation? I think that's a real problem for them. Thank you, Ms. Solstein. Thank you, Your Honor. Good morning. Stacey Friedman from Sullivan and Cromwell. On behalf of the insider defendants, NBNA, Bank of America, Ralph Lerner, and Ken Lewis, I think rather than sort of going through the way I'd organize it, if the court would entertain it, I'd like to start with some of the questions I've heard over the last few minutes. And I think one of the – We tried to anticipate which order things might come in, but you can never – Well, you did it brilliantly, then. You realized the order, and you sent Ms. Solstein into the fire first. Yeah, exactly. That's – I will pay for that later. I think the essential issue, I think, to take the court's words is whether the contribution claim is right, whether it can be brought. Did you argue that for law rightness? We did in our motion for reconsideration. It's in the record at A1365 and A1369. No, I read these recently a fourth time, but I didn't – I don't remember that argument. I don't remember them jumping on the fact that it wasn't raised below us. If you're going to talk about mootness first, please address the Langer versus Monarch life argument. Why is this case different? And then at some point, the most significant thing to me for you is how do you explain that language, which I quoted from Judge Sweet's opinion, because I think Ms. Solstein was telling us, you've got a way for us to see that as not applying 1367C2 standards to the question of whether there's a federal claim as opposed to supplemental jurisdiction. She virtually promised that you'd convince us. She's gotten me back. Taking it in that order, and I think actually the two tie together, because the quote that I'm going to give you from the judge's opinion, the sites that are underpinned it is the Bell v. Hooks case from the United States Supreme Court that sets out that two basis is when you even have a federal claim, you can still decide not to exercise jurisdiction, and it's that wholly insubstantial or frivolous. And the difference between all of the opinions on which plaintiffs rely, and in particular the Monarch case, is as simple as this. I think it is fair to say that contingent claims can be brought if they're brought in the forum where the contingency is going to be resolved. But that is not our argument. Our argument is here you have a federal contribution claim where the contingency is going to be resolved in a separate proceeding, and we should come back to whether that proceeding is related, et cetera, because I believe the plaintiffs elected not to consolidate with the securities action. They were only elected to proceed on their own. But that is the distinction. And the Monarch case... I'm not saying in that situation. Why shouldn't the court just abstain? Well, abstention is... Maybe I don't understand the question. You're saying that you've got a federal case in which whether or not the outcome of the case really turns on, that is the right to contribution, really turns on something that's going on someplace else. So why not wait until that something simply comes to resolve? Right. Abstain or delay. And I think my opposing counsel said the Tyco case for that proposition. And I think it goes to actually what Judge Jordan said, that why would you wait or abstain on a claim that may never come to be? What is the efficiency there? And that's why I think if you line up, and there's basically four cases they rely on, and all of them the contingency was going to be resolved in the case before the court. In the Monarch case, it was the hospital, Presbyterian hospital versus this insurer. And the question was whether the hospital was going to be liable. So the hospital brought in a contingent claim, saying if we are liable, our insurer is liable as well. And the court was fine with that contingency because it was going to resolve the liability issue. And so having the contingent claim out there made sense to it. Same with City of Moses, an environmental liability claim. And we should come back to it because that statute sort of goes to your question about the PSLRA. But the environmental liability was going to be resolved by that court, and so the court was fine hanging on to the contingent contribution claim. Exact same thing in the official Committee of Asbestos Claimants versus Newark bankruptcy case and in the Tyco case. And I'll quote to you from the Tyco, Your Honor, because this is your point, I think, about can we just put it off. In Tyco they say, when they say they're going to keep the contingent claim, and I quote, and this is at page 13, the facts of the underlying alleged liability for contribution will be developed in the present litigation. And then, Your Honors, there is nothing, there is nothing in the Lemon Bay complaint, whether a matter of fact, a matter of law, or claim, are all resolved in their favor that will ripen the contribution claim. There is only one thing that will ripen that claim, that's a final judgment, non-appealable judgment in the securities action. And Mr. Paskowitz says, well, they're in the same court, same judge, they can coordinate. So what's the difference? I mean, he was more artful about saying it than that. I don't want to put words in his mouth, but that's sort of the gist of it is. So what's wrong with that now? It is the gist of it, Your Honor. The gist of it is the elections that the plaintiffs have made along the way. You've talked about earlier their election not actually to amend the complaint, but to have a hypothetical pleading. They could have elected to try and consolidate with the securities action, to truly consolidate, be before and in the same court. And they elected not to. And so I think it is one thing, and, again, coming back to the distinction, if you look at the cases on which we rely for the proposition that when the contingency can only be resolved in a separate proceeding, that a claim for contribution is not ripe and should not be entertained, that is the distinction. That's the rule of law you want us to come up with. Pardon? That's the rule of law you want us to come up with. That is the rule of law. And I think there's ample support in this circuit and other circuits in the lower courts for that. And this comes back to your second question, which is where is it in Chief Judge Sleete's opinion. And I will not stand before you and say that I didn't wish there was more there. I think everything he has there, and that's my concern, because your argument is a very good argument. And that was really, as I read this, thinking it's all supplemental jurisdiction, confused. But you do make a very good point. But it's not in the opinion, as you said. He relied upon Gibbs, which is supplemental jurisdiction. He relied upon his own case in MDIP. And as I read MDIP, what he did there was basically refuse supplemental jurisdiction. It's not clear. It looks like even in that case, he retained the federal case. So what can we base our opinion on? With all due respect, I think it is here. If you turn to A23, it's page 6 of the opinion. It's toward the bottom. And it talks about the plaintiff bears the burden to prove jurisdiction in fact exists. And then it says, however, the plaintiff's burden is relatively light since, quote, dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claim is, in an internal quote, so insubstantial and plausible foreclosed by prior decisions of the court or otherwise completely devoid of merit as to not involve a federal controversy. And it cites the Kulak case, which cites back to the Hood case from the Supreme Court. It quotes from the Oneida Indian Nation case, which also relies on the Hood v. Bell from the Supreme Court. And so I don't have more than a sentence in two sites, Your Honor. But I have a sentence in two sites, and it is squarely on point with the arguments I'm making. So to accept your line of argument, we would have to accept the legal premise that the contribution claim amounts to a frivolous claim. Yes, Your Honor. And if we can't accept that, you acknowledge that the dismissal on that basis was incorrect, right?  No, but it's not really – ripe is a better adjective to attach to it than frivolous. It's not really a frivolous claim. It's a claim, the legitimacy of which – or legal integrity of which cannot yet be determined because it's contingent on something else. You know, Your Honor, you're actually – and this wasn't in our briefing, but obviously you do a lot more thinking about these cases than you'll ever push paper in front of the court. But this idea of what is insubstantial and frivolous, there's a 1974 opinion from the U.S. Supreme Court, 415 U.S. 528. It's called Higgins. And they talk about, you know, frivolous, not ripe, insubstantial. And the court sort of nods its head that the substantiality doctrine for jurisdictional purposes is characterized as more ancient than analytically sound but remains the federal rule. So it's – I think the court recognizes – the Supreme Court has recognized it's the – what is the right term here? The distinctions between frivolity and ripeness in various opinions is not very clear. But it goes on to say a claim is insubstantial only if its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy. And that is your – That doesn't sound like ripeness. It's not ripeness unless all the opinions of the court say – and I do believe they say this – Ripeness is a question of time. Correct. That a contingent claim that is subject – the contingency is subject to another proceeding resolving the issue and its contribution claim – It's not frivolousness. With due respect, I would say that this is a ripeness claim that is frivolousness. Ripeness is akin to subject matter jurisdiction. It's something the court can consider sui sponte. And I think that the cases line up that when you have a contingency that requires resolution outside the proceeding before the forum, that it is – it's frivolous. It's not ripe. But the thing that – the belly hook word is it's insubstantial. And I do believe that Chief Justice Clegg got that right. It's not – well, if it's not – you're not arguing that. You are. Maybe I shouldn't open that door for you to walk through. But I don't get the sense that there's bad faith here, that maybe the way the thing – from your argument – I'm not saying you're right. But from your perspective, the way the complaint was put together was ill-advised. But I don't think the record would support a conclusion that the contribution claim was based upon bad faith that's only in there because of bad faith. And if it's not, then what do we do with all these other cases that talk about if you've got a federal claim in a complaint so that you would otherwise have subject matter jurisdiction? You have subject matter jurisdiction, and then there's the Gibbons line of cases, there's the statute that talks about how to weed out the state law, stuff that might be attached to it. Let me give you – and I – let me give you a first case in response. It's the Lincoln House case that we cited in our papers. I think – I hope that the court would accept the proposition that you can't just allege a contingent federal claim to get federal jurisdiction because you would have potentially bizarre results. And the First Circuit case in Lincoln House is a great example. Excuse me, Ms. Friedman. We sit up here and see an awful lot of bizarre stuff. We seek to please. The claim – the underlying claim was the state of New Hampshire breach of contract claim, and the plaintiff ran off to federal court to also assert a RICO claim. The RICO claim was not alleging damages from racketeering activity. It was saying that, well, if I win my federal – if I win my state contract claim, he might try to abscond with his assets in violation of RICO. And the First Circuit said no. That – the idea that you would have a contingent recovery depending on what's going to happen in another proceeding, we're not going to give you federal jurisdiction just because that – It's very different because she has a specific statute which gives rise to a kind of a contingent liability and a jurisdiction based upon that. So that's different than somebody really wearing belts and suspenders in the RICO context and covering all bases. I agree it's on a different point in the spectrum, but I come back to Judge Jordan's observation about the PSLRA. I'm just asking questions. I'm not making observations. No, no, no. I'm sorry. I come back to your question about the PSLRA. Don't you give an observation. Don't – I will. I'm not going to choose among my panel. And I think the observation is fair, and I – obviously, we argued in our brief. There was no other way to interpret it, but coming along the spectrum, I don't disagree that the RICO one's pretty far out there. But what I'm telling you is this is sufficiently insubstantial and frivolous that it was – At this point, I would not say. At this point, because the PSLRA doesn't recognize this claim until the judgment is final. And it's wholly – Well, is that true? It recognizes the claim contingent upon something else. The claim is there in the PSLRA. Well, I'll distinguish between the language of the PSLRA, which I think you started to quote from the liability for damages, both joint and several, says a final judgment must be entered. Proportionate liability uses the same language. A final judgment must be entered. And I'll juxtapose it to the Moses case that they cited, which was that environmental case. Because in that environmental case, the statute for contribution expressly said, and this is 42 U.S.C. 9613, that the contribution claim can be brought during or after the civil action for liability. So I do think there is a distinction here. And I do think on the spectrum, Judge, of cases that are far out there, the RICO, I do think we're still in a place where there is no basis for a contribution claim that I'm aware of. Well, if we accepted that that were true, that this was not ripe for purposes of discussion here, what's your response to the next line of argument, which we heard from Mr. Paskowitz, which was if we had been permitted to amend, it wouldn't make any difference whether that particular claim wasn't ripe, because we have other bases for federal jurisdiction, which we should have been permitted to assert diversity of jurisdiction. I mean, diversity of jurisdiction, while not a claim, was one thing we had going for us. But we also added other claims that are 10b-5, other federal claims. And we should be allowed to send it back because we got an amendment that will keep federal jurisdiction. What's your response? My response is they elected into the problem about which they complain. They've elected this problem. And you've already covered the ground, so I won't beat it to death. But when you tell a federal judge, we do not wish to amend. And what you put before them is not an amended complaint. It's a hypothetical complaint. Even if that court wished to take affirmative steps to try and help somebody out, do they enter the hypothetical complaint? Do they call up the plaintiffs and ask them how hypothetical is it? How are you going to change it? They elected strategically not to do it. And, Your Honor, between the time when the SIR reply briefing and the subject matter jurisdiction was raised, that was November of 2006 when they put in their brief. It was January 2007 when we put in ours. It was seven more months before the district court moved, acted on the motion to dismiss, and dismissed the complaint. They had seven months to rethink their strategy as well. I cannot tell you that there's no way Mr. Pasquitz and his colleagues couldn't amend federal question jurisdiction. I'm sure they could. I'm just telling you that in a situation where they strategically elect not to try and really move to amend and let time pass and roll the dice, it's not appropriate to come to this court and ask for help. Strategically, it would have been callously. It would have been callously, except for, Your Honor, they did, when Judge Lee calls you up and says, I'd like SIR reply briefing on subject matter jurisdiction, you're on notice.  And when you attach a hypothetical complaint to your SIR reply and you tell the court, but I do not want to enter it, you're on notice. That's tactical. That's an election. Let's assume they could put in the 10B5, the diversity amendment, so now there's no issue about this. You still have the same problem. And everything you're arguing about how the contingent liability impacts on federal court subject matter jurisdiction, it's still there with diversity. So how does that – what does that do to your argument? It's the same problem site, exactly, if it's diversity as opposed to federal question. Yeah, we're before the court primarily on diversity grounds, but I think in both of the defendant's submissions, we've argued that alternative grounds are available on the record. I don't think this claim survives because I don't think the – we don't believe that the federal contribution claim is meritorious or cognizable at this time, but in addition, it's a derivative claim. And for the reasons set forth primarily in the outside director's papers, a derivative claim we don't believe has merit. So there are other reasons why I firmly believe this case won't proceed. And I think those reasons are set forth in the record, and if the court wishes to go and reach us on alternative grounds, I think that is a way that this could proceed. Thank you very much, Ms. Friedman. Thank you. Your Honors, it was said that we amended several times and failed to properly plead a complaint. I think she said this was your third. Well, we first filed our complaint alleging the federal derivative claim. Then within that very short period of time, it was only a five-month period we're talking about, for all of these claims, the merger occurred. So my client amended to allege supplemental facts concerning the merger and additional claims. Then Benoit, my client, and Mr. Rosenwald got together and decided we'll put in one complaint for convenience. That's a consolidated amended complaint. So it's not as if we've been trying and trying and trying to plead a good claim, and we failed over many attempts, and this is Custer's last stand. These are supplemental amendments because new facts came in, and one is a consolidated complaint, which didn't change much at all from the constituent complaint. Was diversity in the first two? Diversity was in the Benoit complaint. The other plaintiff did not have diversity. So the amendments are supplemental with new facts and new claims based upon those new facts, but it's simply a consolidation. They're not attempts to plead a good claim where we don't have one or where a judge has said you don't have one and we've had many bites at the apple and somebody should say that's enough. To penalize plaintiffs in cases who face motion to dismiss in everyday occurrence, a commonplace occurrence, by saying you'd better amend because if you lose this motion to dismiss. That goes to the exchange that Judge Jordan had with both Ms. Friedman and Ms. Saulstein. The way you put the amendment forward was almost with a wink and a nod. I mean, you really put it forward in a way that the court knows we've gotten here, but we really want to stand on our complaint. We thought that is the procedure. If the court finds that there's something wrong with the complaint on file, we can show that we can amend. You thought it was the procedure to say not we move to amend, but to say we don't move to amend, but in the event that we did move to amend, this is what we would amend with. Yes, Your Honor, because ordinarily there's one post-decisional amendment allowed, at least one, and I've seen two, three, and four, but at least one. It has to be the very odd, frivolous case in which not even one post-decisional amendment is allowed, and it makes a lot of sense even to get a judicial feedback as to what should be in an amendment because we could have moved to amend and the judge said, well, still not good. Do it again, and that's not judicial efficiency. I think the ordinary course of litigation in the federal courts is to at least go through one motion to dismiss. The judge grants leave to amend, often with guidance as to what should be in a good complaint, and the plaintiff then amends if they're mistaken as to whether they pled correctly the first time. So in your view, the district court judge sort of becomes a partner with the plaintiff's counsel to figure out how to plead it. Well, given the uncertainties in the law, and I'm sure this panel is very sensitive to that, oftentimes lawyers, judges, whoever, lawyers especially think they've pled a claim the right way. A judge has a different point of view, but yet the claim can be salvaged with an amendment, and it's an everyday occurrence, and to say that the plaintiff is culpable or should be punished for electing to go through one motion to dismiss is not the way. I don't believe that litigation has been working in the federal courts for many, many years. Ordinarily, and this is our first complaint that had a lot of claims in it, this subject matter jurisdiction argument came out of nowhere after removal by the outside defendants who are claiming that there's no subject matter jurisdiction. We're dumbstruck that the argument was made at all. We thought we had pled it correctly, but we're in a position of I don't know how many thousands of litigants who think they've pled things correctly. As a safeguard, tell a judge, well, if for some reason you think we've missed the mark, we can put in a non-frivolous amendment, and the ordinary course of things, and I think under the jurisprudence of this circuit, is to give the plaintiff that one post-decisional amendment at the very least, and we could have cured everything the judge found efficient, and I do have to agree that I'm somewhat confused at the judge's framework for analysis to begin with. So perhaps that amendment would have clarified a lot of the issues for the judge, and we would have had a better record below and a better decision. Did the trial court deal with rightness? Your opponent said that, one of your opponents said that they raised the issue during reconsideration. That's not an adequate time if it wasn't raised earlier. I don't think I saw it in the bullet point. I don't recall it. I'm not saying they're not correct. I don't recall it. I know it wasn't fully briefed and certainly wasn't decided. To say hypothetical contingent claims are not right creates problems with 14A of the Federal Rules of Civil Procedure, which says hypothetical and colored claims can be brought. Well, when you see that, listen, your opponents cite the Sealand case. And if I'm not mistaken – let me just give you this quote. This is a longstanding principle, but Sealand says, the general rule is that a cause of action or contribution does not arise until the party seeking contribution has paid or had a judgment rendered against him or her for more than his or her fair share of the common liability, unquote. So if that's the state of the law, and I think that's an accurate state of the law, how is it that you can say that Rule 14 means that the general law regarding contribution just doesn't have application here? Well, the hypothetical claim does arise. The claim over does arise for purposes of judicial efficiency. For example, in the first circuit case that Ms. Friedman cited, the first case was brought in state court. Then the defendant ran into federal court for a ruling, and the court said, we can't achieve any of these efficiencies that we can ordinarily achieve by putting solid and inchoate claims together, because one's in state, one's in federal. Right, and their response to you is, hey, you guys elected not to get on board with the securities class act. That was your decision to be a separate suit. So whether it's in the same courthouse or not, still separate actions, your choice, you've got to live with it. The fuller picture of that, Your Honor, is at that stage we elected, because the plaintiff there in the securities case was alleging that MBNA committed a securities fraud. We didn't want to get on board in the consolidated complaint and allege that MBNA, on behalf of suing derivatively, committed a securities fraud. It's a perfectly sensible strategy, but that doesn't answer their point, which is you made the choice. You said we don't want to be part of that action. And having said we don't want to be part of that action, the consequence includes you don't get to say, oh, we get to have the advantage of the claim over kind of contingency that may exist in Tyco and these other cases. Now, your decision, be on a different bus, being on a different bus means, you know, you don't get to watch the same movie, have all the same fun they're having on that one train. Your Honor, I think the distinction that we had to make at that point is that we didn't technically want to be in the same side as the plaintiff alleging that our client, MBNA, derivatively committed a securities fraud. We never said we didn't want to be part of the action through coordination, through a joint trial, through joint discovering, through whatever procedures the courts in Tyco and countrywide and all the other cases that have held these types of claims have found to create judicial efficiencies. At that juncture, it didn't make any sense. If the case unfolded, in many cases proceed this way, the derivative claim and the class claim do converge and they do achieve those efficiencies and they do go forward together. Often they settle together globally, and that's a real great benefit and a real detriment when these cases are pending in two different jurisdictions. Often it's to the defendant's benefit for cases to settle globally, be before the same judge, have the same rulings and have the same efficiencies. Nobody wants to have depositions twice, arguments twice, conflicting evidentiary rulings, and all the other waste that goes along with similar claims being in two different courts. One way to resolve this, and we usually see this in the habeas context, is just a stay in advance where, in the habeas context, it happens where the petitioner comes in and has unexhausted claims in the federal habeas petition, the petition, and exhausted claims, the petition is stayed so the person can go back in the state court, exhaust those claims, and once they're exhausted, come back in the federal court. That's one way to do it.